UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANI NARVASA, | No. 2:15-cv-02369-KJM-EFB |
| Plaintiff, | |
| v. | ORDER |
| U.S. BANCORP, | |
| Defendant. | |

      Like many Americans facing foreclosure in the aftermath of the 2008 mortgage crisis, Ms. Fernani Narvasa sought to revisit and modify the terms of the mortgage she had on her California home. When U.S. Bancorp (Bancorp), a national bank, denied her request to modify, she sought a statement of the bank's net present value (NPV) calculation with respect to her home, a tool used to assess the soundness of economic investments. Bancorp refused to supply Ms. Narvasa with this statement, saying it never provides such information. In response, Ms. Narvasa filed suit in this court, alleging Bancorp's refusal to provide an NPV calculation statement violated various state laws. Compl., ECF No. 1. Bancorp disagrees and moves to dismiss Ms. Narvasa's complaint. Mot., ECF No. 7.

      At hearing on Bancorp's motion on February 29, 2016, Arasto Farsad appeared for Ms. Narvasa and Robert McWhorter appeared for Bancorp. ECF No. 11. As discussed below, Bancorp's motion is GRANTED, without leave to amend. Ms. Narvasa is ordered to show cause

1

1  why her third claim for breach of the implied covenant of good faith and fair dealing should not
2  also be dismissed.

3  I.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND

4             On November 14, 2015, Ms. Narvasa filed suit in this court, asserting the
5  following claims: (1) violation of California Civil Code § 2923.6(f)(3); (2) violation of California
6  Civil Code § 2923.7(b); (3) breach of the implied covenant of good faith and fair dealing;
7  (4) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200,
8  *et seq.*; and (5) negligence.  *See generally* Compl.  Ms. Narvasa's first two claims are based on
9  California's Homeowner Bill of Rights (HBOR), a statute that provides borrowers with a private
10 right of action to challenge certain material violations of HBOR.  *Penermon v. Wells Fargo Bank,*
11 *N.A.*, 47 F. Supp. 3d 982, 993 n.2 (N.D. Cal. 2014).

12            Bancorp filed the pending motion to dismiss the complaint on January 19, 2016.
13 Ms. Narvasa filed an opposition on February 8, Opp'n, ECF No. 8, and Bancorp replied on
14 February 18, Reply, ECF No. 9.

15            Ms. Narvasa's claims arise from the following allegations, and from documents
16 attached to the complaint and incorporated by reference.  *See* Fed. R. Civ. P. 10(c); *Davis v.*
17 *HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).  Ms. Narvasa and her husband have
18 lived in Elk Grove, California since March 20, 2001.  Compl. ¶ 8.  Ms. Narvasa holds a primary
19 mortgage loan on her residence "currently serviced by" Bancorp.  Compl. at 2.

20            On September 3, 2015, Ms. Narvasa submitted a completed loan modification
21 application to Bancorp.  *Id.* ¶ 9.  On October 15, 2015, Bancorp sent Ms. Narvasa a formal letter,
22 dated October 5, denying her application.  *Id.* ¶ 11.  In the letter, Bancorp explained it explored
23 fifteen different "loss mitigation programs," but could not approve Ms. Narvasa's application by
24 offering her any one of them.  Compl. Ex. 1, ECF No. 1.  Bancorp based its determination on "the
25 information [Ms. Narvasa] provided" and "applicable investor guidelines" for each loss
26 mitigation program.  *Id.*  The guidelines for each program were not provided in the denial letter.
27 *See id.*
28 /////

1    Ms. Narvasa alleges Bancorp's denial was based on an "NPV failure." Compl.
2 ¶ 11. On October 26, 2015, through her counsel, she contacted Bancorp to discuss the denial
3 letter and to request a copy of the NPV calculations used to assess her application. *Id.* ¶ 12.
4 Bancorp refused to provide a copy, stating it "did not need to provide any of the NPV calculations
5 used," *id.*, and that it "never provide[s] such information," *id.*
6 II.   LEGAL STANDARDS
7    A party may move to dismiss for "failure to state a claim upon which relief can be
8 granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a
9 "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.
10 *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court
11 assumes these factual allegations are true and draws reasonable inferences from them. *Ashcroft v.*
12 *Iqbal*, 556 U.S. 662, 678 (2009).
13    A complaint need contain only a "short and plain statement of the claim showing
14 that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations,"
15 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than
16 unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*,
17 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of a cause's elements do
18 not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). Evaluation under Rule 12(b)(6) is a
19 context-specific task drawing on "judicial experience and common sense." *Id.* at 679.
20    In ruling on a motion to dismiss, the court is not limited by the plaintiff's
21 allegations if the complaint, as here, is accompanied by attached documents. *Knievel v. ESPN*,
22 393 F.3d 1068, 1076 (9th Cir. 2005). Such documents become a part of the complaint and may
23 be considered in considering the defendant's motion to dismiss. *Id.*
24 III.   DISCUSSION
25    Bancorp seeks to dismiss Ms. Narvasa's complaint, contending several of her
26 claims are preempted and, alternatively, her claims lack merit. Mot. at 10–25. Ms. Narvasa
27 contends her claims are not preempted and they otherwise have merit. Opp'n at 10–25. The
28 court first addresses preemption, which is dispositive.

A.     Federal Preemption

Bancorp contends four of Ms. Narvasa's claims are preempted by either the federal National Bank Act (NBA), 12 U.S. C. § 24, or the Home Owners' Loan Act (HOLA), 12 U.S.C. §§ 1461 *et seq.* The four claims, identified by number assigned in the complaint, are those based on (1) section 2923.6(f)(3); (2) section 2923.7(b); (4) the California UCL; and (5) negligence. Mot. at 10. Defendants do not contend Ms. Narvasa's third claim, breach of the implied covenant of good faith and fair dealing, is preempted. *See generally id.* Ms. Narvasa contends none of her claims are preempted. Opp'n at 10. The court first briefly reviews conflict preemption and field preemption, the two types of implied preemption implicated by the NBA and HOLA, respectively, and then proceeds to a preemption analysis.

1.     Conflict Preemption vs. Field Preemption

There are at least two ways state laws that intrude on an area of exclusive federal power can be preempted: conflict preemption and field preemption. *Whistler Invs., Inc. v. Depository Tr. & Clearing Corp.*, 539 F.3d 1159, 1164 (9th Cir. 2008). Under conflict preemption, Congress's intent to preempt state law is implied to the extent that federal law actually conflicts with any state law. *Id.* (citing *Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)). Conflict preemption analysis examines the federal statute as a whole to determine whether a party's compliance with both federal and state requirements is impossible or whether, in light of the federal statute's purpose and intended effects, state law poses an obstacle to the accomplishment of Congress's objectives. *Id.* Under field preemption, by contrast, preemption is implied when Congress "so thoroughly occupies a legislative field," that it effectively leaves no room for states to regulate conduct in that field. *Id.* (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)). With these standards in mind, the court proceeds to the statutes Bancorp contends preempt Ms. Narvasa's claims.

2.     NBA

Congress passed the first National Bank Act (NBA) in the mid-1800s, creating a national system of banks and encouraging the development of a national currency. Among other goals, the Act and its successors was designed to "shelter banking institutions from at least some

4

of the forces of the market which might undermine public confidence in the banks and ultimately threaten their existence." *Am. Soc. of Travel Agents, Inc. v. Bank of Am. Nat. Trust & Sav. Ass'n*, 385 F. Supp. 1084, 1089 (N.D. Cal. 1974).  In an effort to administer the NBA and regulate the activities of national banks,[1] Congress vested the existing Office of the Comptroller of Currency (OCC) with the responsibility for the surveillance of the "business of banking" authorized by the Act.  *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555 (9th Cir. 2010); *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007).  In analyzing state laws that seek to regulate national banks, the Supreme Court has explained, "Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Watters*, 550 U.S. at 11.  The NBA, therefore, implicates conflict preemption.  *Id.*

        3.     HOLA

Congress first enacted HOLA in the middle of the Great Depression, to regulate savings associations for banks "at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008).  Similar to the OCC for the NBA, Congress vested the Office of Thrift Supervision (OTS) with the responsibility to oversee federal savings associations (FSAs)[2] and provided the OTS with plenary power to preempt state laws affecting the operations of these associations when deemed appropriate to serve various ends, including to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of HOLA.  12 U.S.C. § 1464; *see also* 12 C.F.R. § 560.2(a).  In administering HOLA, OTS has made it clear it occupies the entire field of lending regulation for FSAs.  12 C.F.R. § 560.2(a).  HOLA therefore implicates field preemption.  *Id.*

---

[1] A national bank is a nationally chartered bank that is a member of the Federal Reserve System.  *Dictionary of Finance and Investment Terms* 419 (7th ed. 2006).

[2] A federal savings association is a federally chartered institution with a primary responsibility to collect people's savings deposits and to provide mortgage loans for residential housing.  *Dictionary of Finance and Investment Terms* 244 (7th ed. 2006).

4. <u>Which Applies Here:  NBA or HOLA?</u>

Bancorp contends HOLA applies to its conduct in this case because it was related to a loan that originated in a savings association.  Mot. at 11.  Ms. Narvasa, on the other hand, contends her claims target Bancorp's current conduct and not that of its predecessor, and therefore, because Bancorp is a national bank, the NBA controls the preemption analysis.  Opp'n at 11–14.

While the Ninth Circuit has found HOLA preemption applies when a loan originates with an FSA, *Silvas*, 514 F.3d at 1004, it has not addressed whether a national bank can enjoy HOLA protections for conduct related to a loan that originated with an FSA predecessor of the bank.  Absent controlling authority from the Court of Appeals, the court reviews sister court decisions discussing whether HOLA or the NBA governs a national bank's conduct when the conduct relates to a loan originating with an FSA.

In grappling with this issue, district courts have reached divergent conclusions.  A few district courts "have allowed successor entities not subject to HOLA to assert HOLA preemption where the loan at issue originated with a federal savings bank."  *Zappia v. World Sav. F.S.B.*, No. 14–1428, 2015 WL 9473641, at *7 (S.D. Cal. Dec. 28, 2015); *see also Terrazas v. Wells Fargo Bank, N.A.*, No. 13–00133, 2013 WL 5774120, at *3 (S.D. Cal. Oct. 24, 2013); *Winding v. Cal–W. Reconveyance Corp.*, 2011 WL 221321, at *13 (E.D.Cal. Jan. 24, 2011).  These courts appear to have concluded that HOLA applied simply because the loan at issue originated with an FSA.  They do not articulate any consideration of the implications of targeting the bank's post-merger or successive conduct.

In contrast, a growing number of district courts have found HOLA preemption applies only to conduct by an FSA arising before the FSA merges with a national bank.  *See Rijhwani v. Wells Fargo Home Morg., Inc.*, No. No 13–05881, 2014 WL 890016, at *7 (N.D. Cal. Mar. 3, 2014); *see also Cerezo v. Wells Fargo Bank*, No. 13–1540, 2013 WL 4029274, at *2–4 (N.D.Cal. Aug. 6, 2013); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1107–08 (N.D.Cal.2013); *Hopkins v. Wells Fargo Bank*, N.A., No. 13–00444, 2013 WL 2253837, at *3 (E.D.Cal. May 22, 2013).  The court in *Rijhwani* observed that "district courts have more recently

questioned the logic of allowing a successor party such as Wells Fargo to assert HOLA preemption, especially when the wrongful conduct alleged was done after the federal savings association or bank ceased to exist." *Id.* (reviewing cases from California's Northern, Eastern, and Central districts). In the view of the courts referenced in *Rijhwani's* conclusion, national banks do not enjoy the benefit of HOLA protections for post-merger or successive conduct. *See, e.g., Pimentel v. Wells Fargo*, No. 14–05004, 2015 WL 2184305, at *5 (N.D. Cal. May 7, 2015); *Valtierra v. Wells Fargo Bank, N.A.*, No. 10–0849, 2011 WL 590596, *4 (E.D. Cal. Feb. 10, 2011); *Penermon*, 47 F. Supp. at 995.

This court is persuaded that HOLA preemption should apply only to conduct arising before an FSA merges with a national bank, and not to a national bank's post-merger or successive conduct. In this case, the conduct plaintiff complains of is Bancorp's denial of Ms. Narvasa's loan modification application based on alleged "NPV failure" and Bancorp's refusal to provide a net present value calculation statement. This conduct occurred after Bancorp's FSA predecessor changed hands and became Bancorp, a national bank. Compl. at 2; Mot. at 9. Therefore, the conflict preemption posed by the NBA governs the analysis here, and not HOLA's field preemption. *Watters*, 550 U.S. at 11.

### 5. NBA Preemption Analysis Applied

The parties dispute whether the NBA preempts Ms. Narvasa's claims. Mot. at 12; Opp'n at 14.

#### 1. Regulatory Provisions and Preemptive Effect

The NBA vests national banks such as Bancorp with authority to exercise "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 ("Seventh" power identified in the statute). Real estate lending is expressly designated as part of the "business of banking." 12 U.S.C. § 371(a). As the agency charged with administering the NBA, the OCC has primary responsibility for the surveillance of the "business of banking" authorized by the Act. *See Martinez*, 598 F.3d at 555 (citing *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256 (1995)). To carry out this responsibility, the OCC has the power to promulgate regulations and to use its rulemaking authority to define the

1  "incidental powers" of national banks beyond those specifically enumerated in the enacting

2  statute. *Id.* (citing 12 U.S.C. § 93a (authorizing the OCC "to prescribe rules and regulations to

3  carry out the responsibilities of the office")).

4          In addressing "Real Estate Lending and Appraisals," the OCC has provided the

5  following under the heading, "Applicability of state law":

6          A national bank may make real estate loans under 12 U.S.C. [§] 371
and § 34.3, without regard to state law limitations concerning . . .

7  (9) [d]isclosure and advertising, including laws requiring specific
statements, information, or other content to be included in [credit-

8  related documents] . . . [and] (10) [p]rocessing, origination,
servicing, sale or purchase of, or investment or participation in,

9  mortgages. . . .

10  12 C.F.R. § 34.4(a)(9), (10); *Martinez*, 598 F.3d at 556.

11          OCC regulations possess the same preemptive effect as the NBA itself. *Martinez*,

12  598 F.3d at 556 (citing *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)).

13  Therefore, the question for this court is one of conflict preemption: whether Bancorp can comply

14  with both the NBA and OCC regulations and the state laws Ms. Narvasa invokes, or whether the

15  state laws frustrate Congress's purpose in passing the federal law and providing for its

16  implementation by the OCC. *See id*. at 555; *Whistler Invs., Inc.*, 539 F.3d at 1164.

17          In answering this question, the Ninth Circuit does provide some guidance by way

18  of analogy. The Circuit has held the NBA preempts state laws requiring a bank to disclose the

19  costs it incurs for services rendered to customers. *Martinez*, 598 F.3d at 557. In *Martinez*, the

20  mortgager plaintiffs brought action against the defendant bank, alleging violations of California's

21  Unfair Competition Law (UCL) in connection with excessive fees allegedly charged by the bank

22  when refinancing plaintiffs' home mortgage. *Id.* at 552. The fees related to the bank's process of

23  underwriting the plaintiff's loan refinance request, which relied on a method by which the bank

24  analyzed the risk involved in making a loan to determine whether that risk was acceptable to the

25  bank. *Id.* at 552 n.1. The plaintiffs alleged "fraudulent" conduct in violation of the California

26  UCL, because the bank did not disclose the costs it incurred for underwriting services and instead

27  only disclosed the costs it charged customers for rendering those services. *Id*. at 557. The district

28  court granted the bank's motion to dismiss the UCL claims, holding that the NBA and related

1   federal regulations preempted charges for "fraudulent" conduct.  *Id.* at 557–58 (analyzing the
2   effect of 12 C.F.R. § 34.4(a)(9) on Cal. Bus. & Prof. Code §§ 17200, *et seq.*).
3               The Ninth Circuit in *Martinez* affirmed the district court's holding, finding that
4   while the UCL itself was not preempted, to the extent the plaintiffs' claims mandated the bank to
5   disclose or provide a statement of its underwriting costs, such claims were preempted by the OCC
6   regulation addressing real estate lending, which expressly authorized banks to "make real estate
7   loans . . . without regard to state law limitations concerning . . . [d]isclosure and advertising,
8   including laws requiring specific statements, information, or other content to be included in
9   [credit-related documents]."  *Martinez*, 598 F.3d at 557 (analyzing 12 C.F.R. § 34.4(a)(9)).  The
10  plaintiffs' claims were dismissed.  *Id.* at 558.

                           2.   Analysis

                                a.   UCL Claim

13              Here, the conduct giving rise to Ms. Narvasa's UCL claim is Bancorp's denial of
14  her application for "NPV failure" and its refusal to provide Ms. Narvasa with an NPV
15  calculations statement.  Compl. ¶ 11.
16              Ms. Narvasa's case in this respect is analogous to *Martinez* in that she seeks to
17  hold Bancorp liable for failing to provide a statement related to a method used to assess whether
18  modifying her loan was a sound economic investment, much like the *Martinez* plaintiffs' attempt
19  to hold the bank liable for failing to disclose a statement related to its underwriting process.
20  Ms. Narvasa's suit also is similar to *Martinez* in that her state law claim conflicts with 12 C.F.R.
21  § 34.4(a)(9), which authorizes a national bank to make real estate laws without regard to "laws
22  requiring specific statements, information, or other content to be included in [credit-related
23  documents]."  *Martinez*, 598 F.3d at 556.  *Martinez* supports this court's finding that Ms.
24  Narvasa's fourth claim is preempted by the NBA.

                                b.   HBOR Claims

26              Bancorp's conduct also gave rise to Ms. Narvasa's HBOR claims.  *See generally*
27  Compl.  Ms. Narvasa alleges Bancorp violated the plain language of section 2923.6(f)(3), which
28  explicitly requires that banks "shall send a written notice to the borrower identifying the reasons

                                            9

for denial, including . . . the monthly gross income and property value used to calculate the net present value . . . ." Cal. Civ. Code § 2923.6 (f)(3). Ms. Narvasa's section 2923.7(b) claim is based on the same conduct, although the law supporting her claim does not explicitly prohibit the conduct alleged. *See* Cal. Civ. Code § 2923.7(b) ("The single point of contact shall be responsible for . . . [h]aving access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.").

The court concludes section 2923.6(f)(3) is preempted because its mandate that banks provide NPV statements conflicts with 12 C.F.R. § 34.4(a)(9). Ms. Narvasa's section 2923.7(b) claim is similarly preempted to the extent she attempts to hold Bancorp liable for not providing the NPV calculations statement.

c.  Negligence

Ms. Narvasa's negligence claim is similarly preempted to the extent she attempts to hold Bancorp liable for not providing the NPV calculations statement.

Because the four claims attacked by defendant are dismissed on the basis of federal preemption, the court need not address Bancorp's other arguments in support of dismissal.

B.   Breach of Implied Covenant of Good Faith and Fair Dealing

Bancorp does not address whether Ms. Narvasa's claim for breach of the implied covenant of good faith and fair dealing is preempted. Like Ms. Narvasa's other claims, however, this claim relies on the theory that Bancorp refused to provide an NPV calculations statement. *See* Compl. ¶ 28. Because this court has reason to dismiss this claim for the same reasons it dismissed Ms. Narvasa's other claims, Ms. Narvasa is ordered to show cause why this claim should not be dismissed on preemption grounds as well.

IV.   LEAVE TO AMEND AND CONCLUSION

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend is to be granted freely. Fed. R. Civ. Proc. 15(a). The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v.*

*United States*, 58 F.3d 494, 497 (9th Cir. 1995).  At the same time, the court need not grant leave to amend if doing so would be futile.  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

Because the NBA preempts four of Ms. Narvasa's claims, leave to amend them would be futile.  Accordingly, defendant's motion to dismiss Ms. Narvasa's federal complaint is GRANTED without leave to amend with respect to her claims relying on (1) section 2923.6(f)(3); (2) section 2923.7(b); (4) the California UCL; and (5) negligence.

Ms. Narvasa is ordered to show cause why her third claim for breach of the implied covenant of good faith and fair dealing should not also be dismissed.  She may respond to this order at the Status (Pretrial Scheduling) Conference currently set for August 4, 2016.  Alternately, if Ms. Narvasa requests the opportunity to brief this question, she is directed to meet and confer with defense counsel to develop a proposed briefing schedule for submission to the court prior to August 4, 2016.

This order resolves ECF No. 7-1.

IT IS SO ORDERED.

DATED: July 28, 2016.

_____
UNITED STATES DISTRICT JUDGE